**IN THE UNITED STATES DISTRICT COURT**
**OF THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| ANTHONY YOUNG AND CHELSEY YOUNG, Individually, and as Next Friend of K.Y., a Minor, | §<br>§<br>§<br>§ | No.  5:19-cv-161-RWS-CMC |
| v.                  Plaintiffs, | §<br>§<br>§ | |
| BRAUM'S, INC. | §<br>§<br>§ | |
| Defendant. | **ORDER** | |

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636.  The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Braum's, Inc. ("Defendant") filed objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## I. BACKGROUND

This is a premises liability case involving personal injuries K. Y., a minor child, sustained when he caught his thumb in the pinch point of the men's restroom door when he was exiting the restroom at Defendant's premises. Anthony and Chelsey Young (parents of Minor K. Y.); Nikki Keefer (parent of Minor A. K.); and LaBresha Fulmer (parent of Minor R. J.) originally filed this action in state court against Defendant, seeking to recover damages under theories of premises liability and gross negligence as a result of injuries allegedly suffered by Minors K. Y., A. K., and R. J. from 2015 to 2019 from the pinch point of the men's restroom door at Defendant's Mt. Pleasant store. Defendant removed the case to this Court on December 3, 2019 as a result of diversity jurisdiction.

On May 19, 2020, Defendant filed a motion to sever, or in the alternative, motion for separate trials. Docket No. 12. On September 24, 2020, Plaintiffs filed a motion for leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and Federal Rule of Civil Procedure 20 to add as a plaintiff Barbara Pond, as next friend of Minor J. P.[1] Docket No. 23. On November 19, 2020, the Magistrate Judge entered an order granting Defendant's motion to sever and denying Plaintiffs' motion for leave to amend. *See* Docket No. 30. The Court ordered that Plaintiffs' claims be severed into three separate actions, with Plaintiffs Anthony and Chelsey Young, individually and as next friend of K. Y. ("Plaintiffs"), remaining in above Cause No. 5:19cv161.

Following severance, Plaintiffs filed their First Amended Complaint in the above-referenced cause of action, asserting claims for premises defect and gross negligence. Docket No. 43. Defendant moves for summary judgment on both of Plaintiffs' claims. Regarding Plaintiffs' premises liability claims, Defendant asserts a condition on the premises did not pose an unreasonable risk of harm, Defendant did not have notice regarding the alleged condition, and Defendant did not proximately cause Plaintiffs' injuries. Additionally, Defendant contends the condition on the premises was open and obvious. Regarding Plaintiffs' claim for gross negligence, Defendant argues Defendant's actions did not involve an extreme degree of risk and Defendant did not act with conscious indifference to the rights, safety, or welfare of others.

## II. REPORT AND RECOMMENDATION

On March 25, 2021, the Magistrate Judge issued a 52-page Report and Recommendation

---

[1] According to Plaintiffs' proposed First Amended Original Complaint, on June 1, 2013, J. P. was exiting the women's restroom door at the same Braum's location, when the restroom door struck her back causing her to fall forward. While in the process of catching herself, "the pinch point of the door smashed her middle, ring, and pinky finger, which has now, seven years later, caused permanent numbness and scaring of the area where [J. P.] sustained the injury." Docket No. 23-1, ¶23.

("R&R"), recommending Defendant Braum's, Inc.'s Motion for Summary Judgment be denied. Docket No. 54. After ruling on Defendant's objections to Plaintiffs' summary judgment evidence (*id*. at pp. 8-16), the Magistrate Judge set forth in detail the pertinent facts. *Id*. at pp. 16-26.

In her discussion of the premises liability or premises defect claims, the Magistrate Judge first considered Defendant's three separate arguments as to why it did not owe a duty to Plaintiffs: (1) it did not have actual or constructive knowledge of the condition prior to K. Y.'s incident; (2) the condition was open and obvious and known to Plaintiffs; and (3) the men's restroom door at the subject premises did not present an unreasonable risk of harm.  The Magistrate Judge found each argument without merit.

The Magistrate Judge then considered whether there is sufficient evidence to create a genuine issue of material fact that the alleged dangerous condition was a proximate cause of Plaintiffs' injuries. Considering all of the evidence and drawing all reasonable inferences in favor of Plaintiffs, the Magistrate Judge found a reasonable jury could conclude that the particular door at issue was a cause-in-fact of the injury. R&R at p. 47. The Magistrate Judge further concluded a reasonable jury could conclude that the danger from the pinch point in the men's bathroom door (due to the door's configuration, self-closing feature, lack of hinge guard, and allegedly non-functioning damper) was foreseeable. *Id.* The Magistrate Judge recommended summary judgment be denied on Plaintiffs' premises defect claims. *Id.* at p. 48.

The Magistrate Judge also recommended summary judgment be denied on Plaintiffs' gross negligence claim, reasoning as follows:

> After a careful review of the record and the arguments presented, the Court is not convinced that Defendant has met its burden of demonstrating there is no genuine issue of material fact as to the elements of gross negligence that would entitle it to

judgment as a matter of law. There is some credible evidence Defendant knew about the risk and that Defendant's actions, or lack thereof, could rise to the level of gross negligence.

*Id.* at p. 51.

## III. OBJECTIONS

Defendant filed objections to the R&R. First, Defendant objects to the Magistrate Judge's rulings regarding Defendant's objections to certain evidence submitted by Plaintiffs in response to Defendant's motion for summary judgment. Second, Defendant objects to the Magistrate Judge's conclusions regarding whether there is sufficient evidence to raise a genuine issue of material fact that Defendant had actual or constructive knowledge of any dangerous condition involving the men's restroom door at the subject premises. Third, Defendant objects to the Magistrate Judge's analysis and conclusion on the issue of whether the condition was open and obvious. Fourth, Defendant objects to the Magistrate Judge's conclusion that there is legally sufficient evidence to raise a genuine issue of material fact that a condition on the premises presented an unreasonable risk of harm. Fifth, Defendant objects to the Magistrate Judge's conclusion that there is sufficient evidence to raise a fact issue that Defendant's alleged breach proximately caused Plaintiffs' injuries. Finally, Defendant objects to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiffs' gross negligence claim.

## IV. APPLICABLE LAW

"Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Odom v. Kroger Texas, L.P.*, Civil Action No. 3:13-CV-0579-D, 2014 WL 585329, at *3 (N.D. Tex. Feb. 14, 2014) (quoting *Great*

*Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir.2002) (citation and internal quotation marks omitted in *Odom*)). Under the general umbrella of negligence, there are distinct species of claims. *Odom*, 2014 WL 585329, at *3. The first type is a premises liability claim, also known as a "premises defect" claim.[2] *Id.*

> To prevail on a premises liability claim in Texas, an invitee must show:
>
> (1) That the owner had actual or constructive knowledge of some condition on the premises;
>
> (2) That the condition posed an unreasonable risk of harm to the invitee;
>
> (3) That the owner did not exercise reasonable care to reduce or eliminate the risk; and
>
> (4) That the owner's failure to use reasonable care proximately caused the harm to the invitee.

*Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983); *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

"In a premises liability case, as in a negligent activity case, 'the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach.'" *Reyes v. Dollar Tree Stores, Inc.*, 221 F. Supp. 3d 817, 833 (W.D. Tex. 2016) (quoting *Del Lago Partners,*

---

[2] The second type of claim is a negligent activity claim. *Odom v. Kroger Texas, L.P.*, Civil Action No. 3:13-CV-0579-D, 2014 WL 585329, at *3 (N.D. Tex. Feb. 14, 2014). "Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Id.* (quoting *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992)). In other words, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Id.* (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (footnotes omitted in *Odom*)). Although Texas courts consistently refer to premises liability and negligent activity claims as distinct species of negligence, "the lines between [the two types of claims] are sometimes unclear, since 'almost every artificial condition can be said to have been created by an activity.'" *Id.* (quoting *Del Lago*, 307 S.W.3d at 776 (quoting *Keetch*, 845 S.W.2d at 264)).

*Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) ; also citing *Corbin*, 648 S.W.2d at 296 (establishing the elements of premises liability under Texas law)). "Under a premises-defect theory, however, the scope of the duty is more singularly defined: the plaintiff must establish that (1) the premises owner or operator had actual or constructive knowledge of the complained-of condition; and (2) the complained-of condition posed an unreasonable risk of harm." *Oncor Elec. Delivery Co., LLC v. Murillo*, 449 S.W.3d 583, 592 (Tex. App. – Houston [1st Dist.] 2014) (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997) (citing *Corbin*, 648 S.W.2d at 296)).

The duty owed by a premises liability defendant to a person injured on the premises depends on the legal status of the injured party—that is, whether the plaintiff was an invitee, a licensee, or a trespasser. *Smith v. United States*, 727 F. Supp. 2d 533, 541 (E.D. Tex. 2010) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). An "invitee" is a person who enters the possessor's premises in response to an express or implied invitation by the possessor and for the benefit of both parties. *Smith*, 727 F. Supp. 2d at 541 (citing *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975)). No one disputes that K. Y. was an "invitee" because he was a customer at Braum's. *See Mazzola v. Lowe's Home Ctr., L.L.C.*, Civil Action No. 1:19-CV-00469-TH, 2020 WL 6553964, at *2 (E.D. Tex. Oct. 20, 2020), *report and recommendation adopted*, No. 1:19-CV-00469-TH, 2020 WL 6545331 (E.D. Tex. Nov. 6, 2020) (citing RESTATEMENT (SECOND) OF TORTS § 332 (AM. LAW INST. 1965) (invitee defined)).

Under Texas law, a premises owner owes a duty to invitees to "exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of  reasonable care would discover." *Armendariz v. Wal-Mart Stores, Inc.*, 721 Fed. Appx. 368, 369–70 (5th Cir. 2018) (quoting *CMH*

*Homes*, 15 S.W.3d at 101). Texas courts have repeatedly stated that this duty "does not make the possessor an insurer of the invitee's safety." *Id.* at 370 (quoting *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); also citing *CMH Homes*, 15 S.W.3d at 101 ("The duty owed by an owner or occupier of premises to an invitee is not that of an insurer.")).

Whether a duty exists is a question of law for the court and turns "on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant." *Del Lago*, 307 S.W.3d at 762, 767 (quoting *Gen. Elec. Co. v. Moritz*, 257 S.W. 3d 211, 217, 218 (Tex. 2008)). Generally, under Texas law, a landowner has "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Mosley v. Kroger Texas L.P.*, Civil Action No. 3:19-CV-02943-M, 2021 WL 857059, at *1 (N.D. Tex. Mar. 8, 2021) (quoting *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015)). A premises liability defendant's duty is limited to those measures that an ordinary, reasonable landowner would take. *Mosley*, 2021 WL 857059, at *2 (citing *Austin*, 465 S.W.3d at 204).

When a dangerous condition is open and obvious or known to an invitee, an owner does not owe a duty to the invitee. *Id*. In such situations, the owner of the land is not in a better position to discover the risk, and "the law presumes that invitees will take reasonable measures to protect themselves." *Id*. (quoting *Austin*, 465 S.W.3d at 203). Generally, an open and obvious condition is one that is so plainly apparent that the plaintiff will be charged with knowledge and appreciation of the danger. *Mosley*, 2021 WL 857059, at *2 (citing *Goodson v. Southland Corp.*, 454 S.W.2d 823, 827 (Tex. App.—El Paso 1970, writ ref'd n.r.e.)). Texas courts have described an open and obvious condition as one that "any fool can plainly see." *Id.*; *see also Seideneck v. Cal Bayreuther Associates*,

443 S.W.2d 75, 76 (Tex. App.—Eastland 1969), *aff'd*, 451 S.W.2d 752 (Tex. 1970). Additionally, because the inquiry is objective, the invitee's personal knowledge or awareness of the condition does not control. *Mosley*, 2021 WL 857059, at *2 (citing *Armendariz*, 721 Fed. Appx. at 371 (internal citation omitted in *Mosley*)). Texas courts also hold a condition is open and obvious when it occurs naturally "without the assistance or involvement of unnatural contact." *Id.* (quoting *Scott & White Mem. Hosp. v. Fair*, 310 S.W.3d 411, 412–14 (Tex. 2010)). Because the open and obvious rule goes to duty, the evaluation of whether a defect is open and obvious is "a question of law for the court" to decide. *Id.* (quoting *Austin v. Kroger Tex., L.P.*, 746 F.3d 191, 198 (5th Cir. 2013) (internal citation omitted in *Mosley*)).

## V. *DE NOVO* REVIEW[3]

### A.    Defendant's objections to summary judgment evidence

Defendant first objects to the Magistrate Judge's rulings regarding Defendant's objections to the following evidence submitted by Plaintiffs in response to Defendant's motion for summary judgment: (1) Plaintiffs' Ex. B (April 10, 2019 email string); (2) Plaintiffs' Exhibit C (English Report); (3) Plaintiffs' Ex. D (McDonald's Safety Bulletin); (4) Plaintiffs' Ex. H (Pond Affidavit); (5) Plaintiffs' Ex. I (Deposition Testimony of Fulmer); (6) Plaintiffs' Ex. J (Deposition Testimony of Keefer); (7) Plaintiffs' Ex. O ("Closing the Door on Finger Injuries" by Geoff Moseley); (8) Fact in Section IV.B.2 – Email String ("when Plaintiff Anthony Young contacted Braum's Senior Claims Representative to demand that Braum's fix the problems with the bathroom doors at their stores, Braum's instead offered the Youngs a coupon for some free ice cream."); (9) Fact in Section

---

[3] The Court will apply the well settled summary judgment standards set forth by the Magistrate Judge in the R&R.

IV.B.4(a) – Door Dampers ("Braum's nonetheless replaced the door dampers shortly after the incident involving K.Y."); (10) Facts/Evidence in Section IV.B.4.b – Jason English Report; (11) Facts/Evidence in Section IV.B. 4. C. – Other Restaurant Chains; and (12) Facts/Evidence in Section IV.B.4.d - Other Incidents.

Federal law affords a magistrate judge broad discretion in the resolution of nondispositive pretrial matters. *Pittman v. U.S.Bank NA, Tr. to Bank of Am., NA*, Civil Action No. 4:19-CV-00397-RWS, 2020 WL 5702138, at *1 (E.D. Tex. Sept. 24, 2020), *aff'd sub nom. Pittman v. U.S. Bank NA*, No. 20-40723, 2021 WL 1100200 (5th Cir. Mar. 22, 2021) (citing FED. R. CIV. P. 72(a); also citing 28 U.S.C. § 636(b)(1)(A)). Under Rule 72(a), "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." *Id.* The Court may modify or set aside a Magistrate Judge's order only if it is clearly erroneous or contrary to law. *Id.* (citing *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Defendant objects to much of Plaintiffs' proffered summary judgment evidence. Defendant also objects to the accuracy of certain statements in the R&R regarding certain evidence relied upon by Plaintiffs (*i.e.*, "any statement or inference that Defendant only offered a coupon for free ice cream is a misstatement of the email exchange in Plaintiff's Ex. B. . . ."). The Magistrate Judge, in setting out the material facts, noted as follows in a footnote:

 The material facts set forth in this section represent the facts as discerned by the

Court from the pleadings and the parties' respective evidentiary submissions, in light of the relevant summary judgment standard requiring the record be viewed in the light most favorable to the nonmoving party. Accordingly, these are the 'facts' for purposes of summary judgment only; they may not be the actual facts. *See Willmore-Cochran v. Wal-Mart Assocs., Inc.*, 919 F. Supp. 2d 1222, 1228 (N.D. Ala. 2013).

R&R at p. 16, n. 5.

The Court finds Defendant's evidentiary and related objections lack merit. Defendant fails to demonstrate that the Magistrate Judge's rulings are "clearly erroneous." Therefore, Defendant's evidentiary objections to the summary judgment evidence, and Defendant's related objections to the material facts section of the R&R, are **OVERRULED**.

## B.   Defendant's objections to the R&R

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2)-(3).

In its objections, Defendant largely relitigates and reurges Defendant's original summary judgment motion. However, the Court will address Defendant's arguments regarding whether it owed a duty to Plaintiffs, focusing primarily on the issue of whether there is sufficient evidence to create a genuine issue of material fact that Defendant had actual or constructive knowledge of the condition prior to K. Y.'s incident. Defendant has presented a new argument in support of this assertion, namely that Plaintiffs have failed to offer any evidence that Defendant or its employees had knowledge of the three prior incidents or any issue with the restroom door prior to K. Y.'s incident. *See* Docket No. 69 at p. 13.

As noted above, in its motion for summary judgment, Defendant presents three separate arguments as to why it did not owe a duty to Plaintiffs: (1) it did not have actual or constructive

knowledge of the condition prior to K. Y.'s incident; (2) the condition was open and obvious and known to Plaintiffs; and (3) the men's restroom door at the subject premises did not present an unreasonable risk of harm. In finding the first issue without merit, the Magistrate Judge discussed, and distinguished, *Harvey v. Racetrac Petroleum, Inc.*, No. 3:07-cv-1828-D, 2009 WL 577605 (N.D. Tex. 2009), the case primarily relied upon by Defendant on the issue of knowledge.

In its objections, Defendant asserts Plaintiffs in this case, similar to the plaintiffs in *Harvey*, have no evidence that Defendant had actual knowledge of the allegedly defective men's restroom door. Docket No. 69 at pp. 15-16. According to Defendant, the prior incidents of the children of Ms. Pond, Ms. Fulmer, and Ms. Keefer were not reported to Defendant. *Id*. Defendant further asserts Plaintiffs have no credible evidence to support their assertion that Defendant created the condition by putting the hinge on the wrong side of the restroom door. *Id.* at p. 16. What is more, Defendant argues creating the condition does not establish knowledge as a matter of law for purposes of premises liability. *Id*.

As an initial matter, the Court agrees with the Magistrate Judge that *Harvey* is distinguishable from this case. In *Harvey*, the plaintiff and her minor son entered a gas station operated by the defendant and entered the women's restroom. *Harvey*, 2009 WL 577605, at *1. As they were exiting, the door closed on the minor's right hand, resulting in the amputation of the tip of one of his fingers. The plaintiff sued the defendant for negligence, relying on a theory of premises liability. *Id.* The defendant moved for summary judgment. *Id.*

The dispositive question presented by the motion was whether a reasonable trier of fact could find that the defendant was on constructive notice of a condition that posed an unreasonable risk of harm to the plaintiff-invitee. *Id.* Concluding that it could not, the court granted summary judgment

in favor of the defendant. In *Harvey*, the plaintiff neither contended "that RaceTrac had actual knowledge of the allegedly defective door, nor d[id] she posit that RaceTrac created the condition. Rather, she maintain[ed] that RaceTrac had constructive knowledge of the unreasonable risk of harm given the proximity of RaceTrac's employees to the allegedly defective door." *Id*. at *2. According to the court in *Harvey*, the plaintiff presented no temporal evidence that would enable a reasonable trier of fact to determine how long before the minor's injury the door had been in an unreasonably dangerous condition. *Id*. ("In other words, although the employees may have used the women's restroom and observed the door, what is determinative under Texas premises liability law is whether they observed the door close with the speed and force that Demetrice maintains made it defective and unreasonably dangerous. This is so because there must be proof of how long the hazard was there before liability can be imposed on a premises owner for failing to discover and rectify or warn of a dangerous condition.").

Here, rather than asserting Defendant had constructive knowledge of the allegedly dangerous condition, Plaintiffs contend Defendant had actual knowledge of the allegedly defective door. First, Plaintiffs rely on the evidence of three prior incidents of children getting their fingers caught in the pinch point of the hinge side of one or the other self-closing restroom doors at the Mount Pleasant Braum's.[4] In June of 2013, Barbara Pond's daughter's fingers were injured by the women's restroom door. Pond Aff. at p. 1. Six year old J. P. was exiting the women's restroom, and the restroom door struck her from behind, causing J. P. to extend her arm to try to regain her balance. *Id.* In doing so, she caught her middle, ring and pinky finger in the hinge side of the self-closing restroom door, which resulted in contusions to her three fingers. *Id.* Ms. Pond states she noticed the door "still

---

[4] Two of the incidents involved the men's restroom door, and one incident involved the women's restroom door.

slamming extremely hard and fast" following J. P.'s incident.[5] *Id.* at p. 2. "However, the last time [they] went to the Mt. Pleasant Braum's was in the Spring of 2020, after a softball tournament. At that time, [Ms. Pond] noticed that the doors had been repaired and no longer slammed shut." *Id.*

In January of 2015, minor R. J. caught his middle finger in the hinge side of the men's restroom door, smashing his finger in the door. Fulmer Dep. at 11:5-8, 18:23-20:1 (further stating he did not have to get stitches and no bones were broken). In March of 2018, minor A. K. caught her pinky finger in the hinge side of the men's restroom door, and the door lacerated her finger.  Keefer Dep. at 18:9-14; *see also id.* at 29:5-12 (further stating the door shut with force that was "unreasonable").

Previous incidents involving the condition in dispute may help establish that defendant knew or should have known that the condition was dangerous. *Bean v. Wal-Mart Stores, Inc.*, Civil Action No. 4:07-CV-3201, 2008 WL 8082761, at *3 (S.D. Tex. Dec. 8, 2008). In its objections, Defendant argues, for the first time, there is no evidence the prior incidents were reported to Defendant or Defendant's employees. *See* Docket No. 69 at p. 18. According to Defendant, Ms. Fulmer and Ms. Keefer testified in their depositions that they did not notify Defendant of the incidents. *Id.* (citing Deposition of Nikki Keefer at 56:4-16; also citing Deposition of LaBresha Fulmer at 36:24-37:14).

The Court finds this argument without merit. Importantly, Plaintiffs have other evidence sufficient to create a fact issue as to whether Defendant had actual knowledge of the allegedly unreasonably dangerous condition.  As set forth by the Magistrate Judge in the R&R, the Fifth Circuit Court of Appeals has recently stated that actual knowledge may be established by

---

[5] In its reply, Defendant asserts there is no evidence that Ms. Pond notified Defendant of her concerns. Docket Entry # 50 at p. 6.

circumstantial evidence of knowledge. R&R at p. 35 (citing *Armendariz v. Wal-Mart Stores, Inc.*, 721 Fed. Appx. 368, 370 (5th Cir. 2018) (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex. 1992))).[6] "Proof that the premises owner . . . created a condition which poses an unreasonable risk of harm may constitute circumstantial evidence that the owner or occupier knew of the condition." *Id*. (quoting *Keetch*, 845 S.W.2d at 266).

In its motion, Defendant asserted no Braum's employees created the condition or were controlling the restroom door at the time it closed on K. Y.'s thumb. *See* Docket No. 37 at p. 13. Defendant further asserted an inspection of the men's restroom door following K. Y.'s incident showed there was nothing wrong with the door and the way it functioned. *Id.* In its reply in further support of its motion, Defendant argued there is no law requiring the placement of finger guards or hinge protectors on doors. *See* Docket No. 50 at p. 6. Defendant makes the same argument in its objections, stating "Plaintiffs have failed to pinpoint any corporate guidelines regarding the placement of the door hinge at the premises or any statute, law, code or regulation that mandates the sides where door hinges are to be placed or if hinge guards are required." Docket No. 69 at p. 17.

However, as pointed out by the Magistrate Judge in the R&R, Plaintiffs have alleged, and presented evidence in support of their allegations, that Defendant created the allegedly dangerous condition by placing the hinge on the wrong side of the self-closing door when it built the Mount Pleasant store and failing to include a hinge guard. Specifically, Plaintiffs rely on the twelve page

---

[6] In its objections, Defendant specifically argues this case is different than *Armendariz*, a case involving a trip-and-fall accident where the plaintiff fell over a misaligned wooden pallet located under a display of nail polish. Docket No. 69 at p. 16. The Magistrate Judge did not rely on *Armendariz* for the similarity of the facts. Rather, she cited the case as a recent statement by the Fifth Circuit Court of Appeals in a premises defect case that actual knowledge may be established by circumstantial evidence of knowledge. *See* R&R at p. 35; *see also id.* at p. 36 ("Proof that the premises owner . . . created a condition which poses an unreasonable risk of harm may constitute circumstantial evidence that the owner or occupier knew of the condition.").

Report from their safety expert, Jason English.

As set out in the R&R, Mr. English summarized his findings regarding the conditions present related to the finger injuries at the subject store. According to Mr. English's Report, one type of machinery hazard that has been recognized since at least the early 1900s is a pinch point hazard. English Report at p. 4. A pinch point hazard is a mechanical hazard where injury or damage may be done by one or more objects moving towards each other, essentially closing a gap to the degree that any body part that enters into the closing space can be crushed or sheared, which depending on the forces involved can cause severe crushing or even amputation of body parts. *Id.*

Specific to doorway pinch point injuries involving children, the National Safety Council reported there are more than 300,000 door-related injuries requiring hospital emergency room treatment each year in the United States. *Id.* According to an article in the American Academy of Pediatrics, an estimated 111,600 children younger than eighteen years of age were treated in the U.S. emergency rooms with amputation injures from 1990 to 2002, with 91.6 percent of those involving fingers. *Id.* Furthermore 82.4 percent of the partial amputations involved children 5 years of age and under, and over half of those injuries were associated with doors. *Id.*

Mr. English states the pressure created on the hinge side of the door as the door closes can reach forty tons per square inch, with the ability to cause severe crushing injuries to fingers, including full or partial amputations. *Id.* According to Mr. English, because commercial doors are often self-closing, larger, and heavier, the risk of door crushing injury is greater in commercial settings than at a personal residence, especially commercial businesses that cater to children, such as the Braum's Ice Cream & Dairy Store in this matter. *Id.*

As opined by Mr. English, a particular layout, direction of door swing, and the side of the

door frame on which the door is hinged can affect risk of exposure. *Id*. at pp. 5-6. As revealed by the video of the incident, at the Mount Pleasant store, both the men's and women's restrooms' hinges are located on the same side as the expected path of travel of a person exiting the restroom. *Id*. According to Mr. English,

> [a]s can be seen in the above drawing, because the door swings inward and is hinged on the left as a person exits, such layout causes a person to walk toward and immediately adjacent to the open hinge and pinch point hazard. This layout creates a much higher risk of a finger inadvertently entering the pinch point as a person exits the restrooms, especially a child who will likely not open the door as fully as they exit, allowing the hinge gap to close rapidly as they exit and pass by the hinge, likely further increasing the risk of a pinch injury for children.

*Id.* at p. 5.

Mr. English further asserts that "the most effective means to eliminate the risk of injury, especially in commercial settings that cater toward children and families, is the installation of door hinge guards to create a barrier to physically prevent fingers from entering the hinge pinch point." *Id*. at p. 6. Mr. English states a pinch point guard or a hinge guard is a narrow strip of plastic that runs from the top to the bottom on the hinge side of the door; on one side, the guard is mounted to the wall where the door meets the wall, and, on the other side, the guard is mounted to the door to create a barrier to physically prevent fingers from entering the pinch point. *Id.* at pp. 6-9 (sample images of door hinge guards).

According to Mr. English, a company called Finger Safe started making hinge guards commercially available in 1996. *Id.* at p. 11. Mr. English also references a July 2008 article published in the magazine *Doors & Hardware*, wherein Geoff Mosely stated as follows:

> Building owners, tenants and facility operators are increasingly being held responsible for injuries that occur as a result of a door not being fitted with adequate safety measures to prevent a finger pinch injury. . . . Door hinge guards cover the

gaps created between the door and the door frame as the door is opened and so eliminate the risk entirely. . . . Door safety should be considered an issue whenever children, vulnerable adults or the unsupervised general public pass through or by a door. The obvious ones are access doors, restroom doors and classroom doors.

*Id.*

Mr. English opines that door hinge guards are a "cost effective solution to physically guard the hazard to prevent fingers from entering the pinch point, with many commercial door hinge guards costing less than $100." English Report at p. 10. Mr. English states the guards are also "easy to install, and typically do not even require removal of the door from the hinges." *Id.* Mr. English notes many commercial establishments, including such chains as McDonald's and Chick-fil-A, have installed door hinge guards at their facilities in the public/customer accessible areas. *Id.*

In its objections, Defendant asserts there is no evidence, other than "conclusory statements from Plaintiffs' expert," that the way the men's restroom door was configured at the premises and lack of hinge guard created a foreseeable and especially high risk of pinch point injuries. Defendant additionally argues a few articles and recommendation from a different restaurant retailer is not evidence that K. Y.'s injury was foreseeable to Defendant or that Defendant had actual knowledge of the unusually high risk of the restroom door. Defendant further asserts there is no state law which mandates hinge guards and/or hinge protectors to be placed in retail and restaurant establishments.[7] Docket Entry # 69 at p. 15. According to Defendant's objections, "[t]here is no evidence proffered by Plaintiffs, other than conclusory assertions, that Defendant created the alleged condition of the

---

[7] According to Defendant, the city of Mount Pleasant, the location of the subject premises, does not require finger guards on any doors. Docket Entry # 69 at p. 15 (citing 2012 International Building Code and Section 405.3.4 of the 2012 International Plumbing Code) (further noting the Texas Administrative Code governing the requirements for physical facilities in retail food establishments does not mention any requirement of a hinge protector or finger guard on doors and OSHA does not mention any requirement for a hinge protector or finger guards for doors).

men's restroom door by designing the door, constructing the door or even placing the door to the hinges in the subject premises." *Id*. at p. 16.

These arguments do not change the result. Although Defendant objects to many of Mr. English's opinions as conclusory, arguing his Report is insufficient to defeat Defendant's motion for summary judgment, the Court disagrees. Having presented competent summary judgment evidence from their expert, Plaintiffs persuasively argue a reasonable jury could conclude from evidence in this case, when viewed in the light most favorable to Plaintiffs, that (1) Defendant decided to configure the hinge on the wrong side of the door when they built the store, (2) Defendant decided to make the door self-closing when they built the store, and (3) Defendant decided not to include a hinge guard when it built the restaurant. *See* Docket No. 46 at p. 14.

The summary judgment evidence, viewed in the light most favorable to Plaintiffs, constitutes circumstantial evidence of actual knowledge of the condition. *See Armendariz*, 721 Fed. Appx. at 370. Defendant's remaining objections to the Magistrate Judge's findings and conclusions related to Plaintiffs' premises defect claims are nothing more than a regurgitation of their arguments raised before, and rejected by, the Magistrate Judge.  The Court has conducted a *de novo* review of the objections in relation to the evidence outlined in detail by the Magistrate Judge and the applicable law.  After careful consideration, the Court concludes Defendant's remaining objections as to the sufficiency of the evidence are without merit and are, therefore, **OVERRULED**.

Defendant also objects to the Magistrate Judge's findings and conclusions regarding Plaintiffs' gross negligence claim. "To recover for gross negligence in Texas, a plaintiff must satisfy the elements of an ordinary negligence or premises liability claim and demonstrate clear and convincing evidence of 'an act or omission involving subjective awareness of an extreme degree of

risk, indicating conscious indifference to the rights, safety, or welfare of others.'" *Pinkerton v. Wal-Mart Stores, Inc.*, Civil Action No. 3:19-CV-2660-K, 2020 WL 4339051, at *2 (N.D. Tex. July 28, 2020) (quoting *Austin v. Kroger Texas, L.P.*, 746 F.3d 191, 196 n. 2 (5th Cir. 2014) (quoting *State v. Shumake*, 199 S.W.3d 279, 286 (Tex. 2006))). Extreme risk "is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Pinkerton*, 2020 WL 4339051, at *2 (quoting *Mobile Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)).

Defendant first asserts there is insufficient evidence from which a jury could conclude that Defendant knew about the risk and that Defendant's actions, or lack thereof, could rise to the level of gross negligence. Docket No. 69 at p. 21. Defendant further argues, for the first time in its objections, that "Plaintiffs have no legally sufficient clear and convincing evidence of any grounds by which Plaintiffs can impute the claim of gross negligence to any vice-principal or manager of Defendant and hold Defendant liable for punitive damages." *Id.*

"A corporation may not be held liable for punitive damages for gross negligence unless the corporation itself (1) commits gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal." *Phillips v. Super Servs. Holdings, L.L.C.*, 189 F. Supp. 3d 640, 656-57 (S.D. Tex. 2016) (citing *R & R Contractors v. Torres*, 88 S.W.3d 685, 708 (Tex.App.—Corpus Christi 2002, no pet.)). However, the standard for gross negligence remains the same. In order to prove gross negligence, the plaintiffs must have proved by clear and convincing evidence that: "(1) viewed objectively from [Crete's] standpoint, the act or omission [ ] involve[d] an extreme degree of risk...and (2) [Crete had] actual, subjective awareness of the risk involved, but

nevertheless proceed[ed] in conscious indifference to the rights, safety, or welfare of others." *Susan Hanan v. Crete Carrier Corp. and Dorn Knapp*, Civil Action No. 3:19-CV-0149-B, 2021 WL 1237105, at *3 (N.D. Tex. Apr. 2, 2021) (quoting *Ellender*, 968 S.W.2d at 921).

Here, Plaintiffs allege the corporation's conduct itself involve an extreme degree of risk and that Defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including K. Y. *See* Docket No. 43, ¶ 14. The Court, having reviewed the summary judgment evidence in the light most favorable to Plaintiffs, concludes that a genuine issue of material fact exists as to Plaintiffs' gross negligence claim against Defendant.[8] Therefore, Defendant's objections are **OVERRULED**.

.

## VI. CONCLUSION

In conclusion, the Court is of the opinion the findings and conclusions of the Magistrate Judge regarding Defendant's motion for summary judgment are correct. Therefore, the Court adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this Court. Based on the foregoing, it is

**ORDERED** that Defendant Braum's, Inc.'s Motion for Summary Judgment (Docket No. 37) is **DENIED**.

**So ORDERED and SIGNED this 22nd day of April, 2021.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

---

[8] It may ultimately be true that Plaintiffs cannot prove that Defendant had the requisite subjective knowledge to have committed gross negligence, just as it may be true that Plaintiffs may not ultimately be able to prove that Defendant acted in a way that should objectively be considered to rise to the level of gross negligence. *See Shofner v. Shoukfeh*, Civil Action No. 5:15-CV-152-C, 2017 WL 3842349, at *5 (N.D. Tex. Apr. 18, 2017). However, these questions cannot be answered by the Court at the summary judgment stage. *Id.* Plaintiffs have pleaded the existence of gross negligence and offered sufficient evidence of gross negligence that a jury could believe; thus, a genuine dispute of material fact exists as to the gross negligence of Defendant. *Id.*